**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHARON G. TYNDALL,

       Plaintiff,

vs.                               CASE NO.  3:10-cv-234-J-32TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

### REPORT AND RECOMMENDATION[1]

    This matter is before the Court on Plaintiff's Complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB").  Plaintiff filed her Brief in support of the appeal of the Commissioner's Decision (Doc. #12), and Defendant filed his Memorandum in Support of the Commissioner's Decision (Doc. #14). The Commissioner has filed the transcript of the underlying administrative record and proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

    The undersigned has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings.  Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); and, Local Rule 6.02(a), United States District Court for the Middle District of Florida.

not benefit the Court in making its determinations.  Accordingly, the instant matter has been decided on the written record.  For the reasons set out herein, the undersigned recommends that the Commissioner's decision be **REVERSED and this case REMANDED for further proceedings.**

## I.  Procedural History

On April 20, 2006 Plaintiff protectively filed an application for Disability Insurance Benefits alleging her disability began March 5, 2006 (Tr. 14).  Her claim was denied initially (Tr. 59) and upon her request for reconsideration (Tr. 66-67).  On June 26, 2007 Plaintiff filed a request for a hearing by an ALJ (Tr. 69). A hearing was held February 25, 2009, at which Plaintiff was represented by attorney Richard Schwartz (Tr. 25).  On March 20, 2009 the ALJ found Plaintiff not disabled (Tr. 14-24) and the Commissioner issued his Notice of Decision - Unfavorable (Tr. 11).  On May 13, 2009 Plaintiff filed a request for review of the hearing decision/order (Tr. 5-9).  On February 19, 2010 the Appeals Council denied review (Tr. 1-4).  Plaintiff's current counsel of record Richard A. Culbertson, Esquire, filed the instant action in federal court on March 15, 2010, requesting that this Court reverse and set aside the decision of the Commissioner, or remand for a *de novo* hearing (Doc. #1).

## III. Background Facts

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since March 5, 2006 as a result of osteoarthritis, fibromyalgia, vertigo, and bulging discs (Tr. 100).

**B. Summary of Evidence Before the ALJ**

Plaintiff was born February 10, 1953 (Tr. 126) and was fifty-six (56) years old at the time of the hearing.  She has a high school education (Tr. 105) and past relevant work as a deli worker, cleaner, and customer service clerk (Tr. 101).  Plaintiff's medical history was discussed at length in the ALJ's decision and will be summarized herein.

### i. Medical Evidence

Plaintiff was referred to Dr. James A. Scott at Neurology Associates of Ormond Beach on March 6, 2006 for evaluation for chronic fatigue, fibromyalgia pain, and vertigo (Tr. 188).  Plaintiff reported to Dr. Scott that she had passed out twice without warning, felt tired all of the time, was depressed, and suffered from muscle aches and vertigo.  *Id.*  Dr. Scott prescribed Elavil for Plaintiff's vertigo.  *Id.*  Thereafter, Dr. Scott began to treat Plaintiff regularly for fatigue, fibromyalgia, and vertigo.

When Plaintiff visited Dr. Scott again in April, he reported she was experiencing chronic pain and fatigue, and Elavil was not benefitting her (Tr. 187).  An MRI on June 12, 2006 revealed multilevel degenerative disc disease, most pronounced between C4 and C7, as well as osteophyte disc complexes causing extrinsic pressure on the thecal sac with mild narrowing of the neural foramen (Tr. 189).  On June 27, 2006, Plaintiff complained of neck pain and low back pain that radiated down her right leg, and Dr. Scott diagnosed cervical spondylosis and vertigo (Tr. 185).  An electrodiagnostic exam found significant diminished function of the nerves in the lumbar spine (Tr. 315).  A nerve test found symptoms of severe pain in Plaintiff's lower back, radiating pain in her right leg, and swelling in the right ankle (Tr. 317).  Dr. Scott referred Plaintiff to physical therapy, as well as to Dr. Yong Tsai,

who performed a steroid injection. (Tr. 198).  Plaintiff told Dr. Tsai that she suffered from constant, severe back pain and muscle pain, and her medication was not helping.  *Id.* Plaintiff reported she was exhausted and depressed.  *Id.*  Dr. Tsai prescribed Percocet (Tr. 199).  Plaintiff returned to Dr. Tasi for steroid injections on July 14, 2006 and July 26, 2006 (Tr. 194-97).

Plaintiff followed up with Dr. Scott on August 8, 2006 and reported physical therapy had improved her neck pain but she was still experiencing intermittent vertigo (Tr. 184). Dr. Scott restarted Plaintiff on Elavil and had Plaintiff undergo a trial of a TENS unit.  *Id.* Dr. Scott referred Plaintiff to Dr. James Adkins for evaluation of her vertigo.  *Id.*  Plaintiff visited Dr. Adkins on August 18, 2006 (Tr. 204).  Dr. Adkins diagnosed Plaintiff with bilateral labyrinthe hypersensitivity and low frequency sensorineural hearing loss on the left (Tr. 206).  Dr. Adkins prescribed Phenergan and Mepazine.  *Id.*  Plaintiff then returned to Dr. Tsai on August 25, 2006 (Tr. 192).  She reported frequent moderate pain in her arms, neck and shoulders, but told him that her back felt much better following the steroid injections and physical therapy.  *Id.*  Plaintiff stated he had stopped taking the Percocet because it was not helping.  *Id.*  Plaintiff reported she still experienced stiffness, restless sleep, exhaustion, fatigue, and depression.  *Id.*

On September 11, 2006, Plaintiff presented to MediQuick Walk-in Clinic complaining she was hurting from head to toe and her body ached like she had the flu (Tr. 209). Plaintiff was tearful and frustrated that she had no energy, could not sleep and had a headache that had lasted four days (Tr. 210).  One week later, Plaintiff again presented to MediQuick Walk-in Clinic complaining of constant pain and fatigue (Tr. 207).  Plaintiff followed up with Dr. Scott on September 27, 2006 and reported the Mezapine and

4

Phenergan were not helping her vertigo (Tr. 323).  Dr. Scott noted she had recently started Paxil and recommended she continue taking it.  *Id.*  In his report, Dr. Scott expressed, "Again, I feel the patient is unable to work at this time."  *Id.*

Plaintiff underwent a consultative examination by Dr. David Carpenter on October 30, 2006 at the request of the Social Security Administration (Tr. 242).  She complained of pain in her neck, lower back, and upper and lower extremities.  *Id.*  Plaintiff reported chronic fatigue, and intermittent vertigo of two to three episodes each month.  *Id.*  Dr. Carpenter noted Plaintiff had been under the care of a neurologist and pain management specialist and had taken multiple medications with no improvement.  *Id.*  He noted Plaintiff had been through a series of epidural steroid injections in her lower back as well as structured physical therapy for her neck and showed only short-term improvement.  *Id.*  Dr. Carpenter diagnosed chronic pain syndrome and fatigue secondary to fibromyalgia versus Epstein-Barr Virus syndrome (Tr. 244).

Dr. Denise Verones conducted a psychological evaluation on November 8, 2006 at the request of the Social Security Administration (Tr. 249).  Plaintiff reported her mood was generally frustrated, depressed and agitated (Tr. 250).  Plaintiff stated she is unaccustomed to having pain and finds it very frustrating.  *Id.*  Plaintiff reported she did not sleep well, and wakes up every two hours due to pain (Tr. 251).  She reported she does some household chores and her husband does most of the grocery shopping.  *Id.*  Plaintiff told Dr. Verones that if she does too much "she will suffer for three or four days" (Tr. 252).  Dr. Verones diagnosed Plaintiff with adjustment disorder with depressed mood, with a GAF of 60 and

a past year high GAF of 70 (Tr. 251).[2]  She noted Plaintiff "appears to have a number of medical issues, many of which are syndromes, and may have a psychological component. She reports that pain medications, antidepressants, and sleep medications have been ineffective" (Tr. 252).  Dr. Verones stated, "I believe that her main disability is physical in nature, and as such any determination of her claim will need to be made on the basis of physical findings from a physician."  *Id.*

Dr. John Long, a State consulting physician completed a Physical Residual Functional Capacity Assessment on November 13, 2006 (Tr. 267-74).  Dr. Long determined Plaintiff could occasionally lift or carry twenty pounds, could frequently lift or carry ten pounds, could walk, stand or sit about six hours in an eight-hour workday, and had unlimited ability to push or pull (Tr. 268).  Dr. Long determined Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders/ropes/scaffolds (Tr. 269).  Dr. Long determined Plaintiff must avoid concentrated exposure to extreme cold and hazards (Tr. 271).  Dr. Long stated Plaintiff's "symptoms exceed objective findings. Fibromyalgia/chronic fatigue/arthritis not established" (Tr. 272).

On November 14, 2006, Gary Buffone, Ph.D., completed a Psychiatric Review

---

[2] The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships."  A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

Technique Form at the request of the Social Security Administration and found Plaintiff had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 263).  Dr. Buffone diagnosed Plaintiff with adjustment disorder with depressed mood and expressed his belief that her limitations were primarily physical (Tr. 265).

On January 9, 2007, Plaintiff presented to MediQuick Walk-in Clinic complaining of constant, moderate-severe pain all over, which was aggravated by the cold (Tr. 313).  She reported she felt disoriented and confused, and stopped taking her medication because of negative reactions.  *Id.*  Plaintiff reported she was exhausted and depressed.  *Id.*

Plaintiff visited Dr. Scott on February 1, 2007 (Tr. 321).  He noted she was still having quite a bit of pain in the neck and shoulder areas.  *Id.*  She had tried Lyrica but could not tolerate it, and was currently taken Indocin, Effexor, and Tylenol.  *Id.*  Dr. Scott diagnosed cervical spondylosis and fibromyalgia with pain.  *Id.*

On February 12, 2007, Plaintiff began a second series of cervical epidural steroid injections with Dr. David Cummins at Advanced Pain Management (Tr. 420).  Dr. Cummins noted Plaintiff was suffering from "constant, deep, aching and hurting pain in the [sic] both upper extremities as well as in the neck areas."  *Id.*  Plaintiff returned for a second injection on February 26, 2007 (Tr. 419).  Dr. Cummins noted Plaintiff had experienced a bitter taste and a small rash after the first injection.  *Id.*  Plaintiff returned for the third and final injection on March 12, 2007 (Tr. 417).  Plaintiff reported Effexor was making her nauseated and discontinued taking it.  *Id.*  Dr. Cummins prescribed Remeron and noted Plaintiff was still having "a good bit of pain from her fibromyalgia."  *Id.*  Dr. Cummins expressed, "I do not

7

think cervical facets [are] really going to help her very much with her complaints." *Id.*

During follow-up with Dr. Scott on April 5, 2007, he noted Plaintiff had weakness in her upper and lower extremities due to pain (Tr. 32).  Dr. Scott started Plaintiff on Elavil for pain and Diazepam for vertigo.  *Id.*  On May 17, 2007, Plaintiff returned to Dr. Scott and reported the Elavil had not helped her myofascial pain (Tr. 319).  Dr. Scott noted Plaintiff's motor examination was normal but she had point tenderness over the trapezius.  *Id.*  Dr. Scott increased the Elavil dosage to help with the fibromyalgia pain and added Xanax for anxiety.  *Id.*

On August 20, 2007, Dr. Scott completed a Fibromyalgia Residual Functional Capacity Questionnaire (Tr. 375).  Dr. Scott determined Plaintiff experienced constant severe pain, which placed significant physical limitations on her ability to stand, walk, sit, lift, carry, reach, handle, and finger, as well as interfered with attention and concentration (Tr. 376-78).  Dr. Scott expressed his opinion that Plaintiff was incapable of even low stress jobs (Tr. 376).

On March 14, 2008, Plaintiff visited Dr. Mandeep Garawal, a Board Certified Neurologist, for evaluation of non-restorative sleep, intractable fibromyalgia, and insomnia (Tr. 386).  Dr. Garawal asked Plaintiff if she exercises, and Plaintiff responded that she does mild stretching in the morning but if she tries to ambulate and walk she is unsuccessful due to pain.  *Id.*  Dr. Garawal noted Plaintiff looked tired, depressed, had monotone speech and a blunted affect.  *Id.*  Her reflexes were symmetric and the sensory exam was within normal limits.  *Id.*  Dr. Garawal diagnosed psychophysiologic insomnia; insomnia related to pain; REM related obstructive apnea and hypoxemia in the supine position; and moderate period limb movement in sleep (Tr. 387).  Dr. Garawal stated, "She

overall had a complex sleep problem with insomnia, sleep apnea and periodic leg movements occurring during the night. . . . I told her overall she's going to require multi-disciplinary approach to help with her fibromyalgia and sleep.  I really emphasized exercise." *Id.*  Dr. Garawal prescribed Lunesta.  *Id.*

On May 8, 2008, Plaintiff visited Dr. Tsai and reported she was unable to sleep and was experiencing muscle tenderness (Tr. 392).  Plaintiff reported moderate pain in her arms and shoulders, constant hand swelling, numbness in her arms and cramping in her shoulders. *Id.*  Plaintiff reported she was exhausted and depressed. *Id.*  Dr. Tsai diagnosed myofascial pain syndrome, chronic fatigue, and cervical spondylosis.  *Id.*

Plaintiff followed up with Dr. Scott on June 9, 2008 (Tr. 385).  She reported she was feeling very fatigued during the day and was having difficulty falling asleep at night.  *Id.*  She also reported significant pain in the cervical and lumbar spine area.  *Id.*  Plaintiff demonstrated normal strength in all groups and normal reflexes. *Id.*  Dr. Scott increased Plaintiff's dosage of Elavil.  *Id.*

In a letter dated February 23, 2009, Dr. Harish Kher stated he had initially seen Plaintiff in his office on July 28, 2008 upon referral from Dr. Scott, and had last seen Plaintiff on December 12, 2008 (Tr. 423).  Dr. Kher diagnosed "major depressive disorder, moderate, recurrent, and panic disorder with agoraphobia."  *Id.*  Dr. Kher prescribed Lexapro, Klonopin, and Deseryl.  *Id.*

On December 5, 2008, Plaintiff was admitted to the emergency room after she lost consciousness in her home (Tr. 454).  Dr. Jose Garcia reported Plaintiff was lethargic and "had 5/5 strength throughout except gives way with right tibialis anterior due to pain" (Tr. 457).  Dr. Kodlipet Dharmashankar reported an MRI of the brain showed prominent white

matter changes "which seemed chronic small vessel disease" (Tr. 455).   Plaintiff was released from the hospital on December 8, 2008.   Plaintiff followed up with MediQuick Walk-in Clinic on December 11, 2008 and reported she was experiencing chronic back and neck pain (Tr. 424).

### ii. Plaintiff's Testimony

At the hearing, Plaintiff testified her neurologist, Dr. Scott, told her she was suffering from fibromyalgia, bulging discs in her neck, and had problems with her lower back (Tr. 30). Plaintiff stated that her neck hurts where the shoulders meet and swells on both sides so that "it feels like there is a golf ball in it and I get shooting pains from my neck down to my arms and fingers." (Tr. 31).   Plaintiff stated the pain is often at an eight out of ten scale although it sometimes gets worse, and the least amount of pain she has felt in the past three years was a level four or five.   *Id.*  Plaintiff testified her fibromyalgia makes her entire body hurt and it feels like she is constantly getting the flu (Tr. 32). Her muscles ache and she is fatigued all of the time.   *Id.*  According to her testimony, Plaintiff is no longer taking any medications because Dr. Scott recommend she rest for awhile.   *Id.*  Plaintiff testified the medication she was previously taking either made her "deathly sick" or did not improve her symptoms (Tr. 33).   Regarding her daily activities, Plaintiff testified she does not leave home very often but will occasionally go to the store (Tr. 33-34).   Plaintiff testified she is afraid to leave home and feels panicked when she visits the store (Tr. 34). She lies down frequently during the day because she is exhausted, and takes about four "cat naps" each day lasting about ten to fifteen minutes (Tr. 35).   Plaintiff testified she could walk a half a block to a block before having to stop and rest (Tr. 36).   She testified she could sit for thirty minutes at a time before she started to get stiff, and could stand for thirty minutes. *Id.*

10

Plaintiff testified she could only lift up to ten pounds without pain (Tr. 37). Plaintiff testified her fibromyalgia pain is worse in her legs and causes sharp pains and muscle spasms. *Id.* Plaintiff also testified she suffers from vertigo and often feels dizzy. *Id.*

### C. Summary of the ALJ's Decision

A plaintiff may be entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[3] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). A plaintiff bears the

---

[3] All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified.

burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 5, 2006, the alleged onset date (Tr. 16).  At step two, the ALJ found Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine; bilateral labyrinthine hypersensitivity and low frequency sensorineural hearing loss on the left; chronic pain and fatigue secondary to fibromyalgia;[4] adjustment disorder with depressed mood; and panic disorder. *Id.* At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt.  404 Subpt. P. (Tr. 21). At step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform unskilled, light work.[5]  *Id.*  The ALJ then found Plaintiff able to perform her past relevant work as a deli worker and took administrative notice of the existence of 1,400 light unskilled occupations in the Dictionary of Occupational Titles (Tr. 24).

### III.   Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

---

[4] Fibromyalgia is a chronic condition that causes widespread pain in muscles, ligaments, and tendons.  It is also characterized by fatigue and multiple tender areas on the body. http://www.mayoclinic.com/health/fibromyalgia/DS00079 (last visited July 15, 2011).

[5] Light work involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. 20 C.F.R. § 404.1567(b).  A job in the light work category may still require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do substantially all of the aforementioned activities.  *Id.*

1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v.*

13

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## IV. Analysis

Without addressing all of Plaintiff's arguments, the undersigned finds the Commissioner's decision should be reversed and remanded for further proceedings. More particularly, the undersigned finds Plaintiff's argument that the ALJ improperly discounted the opinion evidence offered by Dr. Scott, Plaintiff's treating physician, to be persuasive (*see* Doc. #12 at 10-12).

To illustrate, the Regulations provide that, generally, more weight should be given to the opinion of a source who has examined a claimant than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(d). The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians. The Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating physician's medical opinion is due to be afforded great weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[6] the frequency of examination, the knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. 20 C.F.R. § 404.1527(d)(2)–(5).

In addition, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is "good cause" to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is: (1) not bolstered by the evidence; (2) contrary to the evidence; or (3) inconsistent with the treating

---

[6] Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion. 20 C.F.R. § 404.1527(d)(2)(i).

physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008).[7]

When assessing a fibromyalgia case, however, the ALJ's decision to deny disability benefits cannot turn on a finding that there was a lack of corroborative objective evidence to support a treating physician's diagnosis of impairment or his or her opinion as to the severity of the impairment. *Moore v. Barnhart*, 405 F.3d 1208, 1211-12 (11th Cir. 2005). This is because fibromyalgia is a disorder that often lacks medical or laboratory signs and is mostly diagnosed on an individual's described symptoms. *Id.* at 1211-12*; see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (stating that "fibromyalgia patients present no objectively alarming signs"); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (explaining that "there are no objective tests which can conclusively confirm [fibromyalgia]" (*quotation marks and citation omitted*)); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that "[t]here are no laboratory tests for the presence **or**

---

[7] Unpublished opinions may be cited throughout this order as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

**severity** of fibromyalgia") (*emphasis added*).  The lack of objective clinical findings, in the case of fibromyalgia, is alone insufficient to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations.  *See Green-Younger*, 335 F.3d at 105-08 (holding that because fibromyalgia is "a disease that eludes [objective] measurement," ALJ improperly discredited treating physician's disability determination based upon lack of objective evidence).

In the instant case, Dr. Scott has been treating Plaintiff since March 2006.  On August 20, 2007, Dr. Scott completed a Fibromyalgia Residual Functional Capacity Questionnaire (Tr. 375).  He identified Plaintiff's symptoms as multiple tender points, morning stiffness, muscle weakness, and vestibular dysfunction.  *Id.*  Dr. Scott stated Plaintiff's prognosis was poor and she was not malingering (Tr. 375-76).  He stated Plaintiff had pain in the lumbrosacral spine; cervical spine; and bilateral shoulders, arms, hips, and legs (Tr. 376).  Dr. Scott described Plaintiff's pain as severe and constant, and noted it is precipitated by changing weather, stress, and movement/overuse.  *Id.*  He stated Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation.  *Id.*  Dr. Scott determined Plaintiff's experience with pain would constantly interfere with the attention and concentration needed to perform even simple work tasks.  *Id.*  He stated Plaintiff was incapable of even low stress jobs.  *Id.*  Dr. Scott determined Plaintiff could walk one to two city blocks without rest or severe pain, could sit for twenty minutes at one time and stand for ten minutes at one time (Tr. 377).  Dr. Scott determined Plaintiff could sit and stand/walk less than two hours total in an eight-hour working day, and Plaintiff needed to walk for five minutes every thirty minutes during an eight-hour working day.  *Id.*  He determined Plaintiff would need a job that permits shifting

17

positions at will from sitting, standing or walking, and would need to take unscheduled breaks every two hours so she could sit quietly. *Id.* Dr. Scott determined Plaintiff could carry less than ten pounds occasionally and ten pounds rarely (Tr. 378). He determined Plaintiff could never twist, stoop (bend), crouch/squat, or climb ladders or stairs. *Id.* He determined Plaintiff could occasionally hold her head in a static position, but could rarely look down or up, or turn her head left or right. *Id.* He determined Plaintiff had significant limitations with reaching, handling, and fingering; she could use her hands and fingers ten percent of the time and her arms zero percent of the time. *Id.* Dr. Scott stated Plaintiff's impairments would likely produce "good days" and "bad days," and she would likely be absent from work more than four days per month as a result of her impairments. *Id.*

The ALJ stated he gave Dr. Scott's opinion "little weight" because Dr. Scott's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect [to see] if the [Plaintiff] were in fact disabled" (Tr. 23). In addition, the ALJ stated, "Dr. Scott did not have the benefit of reviewing all the other medical reports contained in the current record."[8] *Id.*

In support of his contention, the ALJ cited to reports in March 2006, January 2007, May 2007 and June 2008 where Dr. Scott found Plaintiff exhibited normal motor strength (Tr. 23). However, a careful review of the medical record revealed no such record of normal motor strength in January 2007. Defendant alleges the ALJ meant to cite this report as one dated in February of 2007 (Doc #14, 7). In Dr. Scott's February 1, 2007 report he

---

[8] The ALJ did not specify which medical reports Dr. Scott did not have the benefit of reviewing. Furthermore, the ALJ did not state the basis for this assertion and it is unclear how the ALJ would know precisely which records Dr. Scott had in Plaintiff's patient file.

did state that Plaintiff had "5/5 strength in all major muscle groups in both upper and lower extremities" (Tr. 321).   However, he also noted Plaintiff "still has quite a bit of pain in the neck area and shoulder areas" and was due for an epidural steroid injection to the cervical spine area for treatment.   *Id.*   When Plaintiff visited Dr. Scott two months later in April 5, 2007, he noted she had "giveaway weakness in the upper and lower extremities mainly due to pain" (Tr. 320).

The ALJ also purported to rely on a June 2007 report that showed physical therapy had improved Plaintiff's neck pain (Tr. 23).   Again, no such report could be found in the record.   Defendant alleges the ALJ meant to cite to an August 2006 report that contains such a finding (Doc #14, 7).   On August 8, 2006 Dr. Scott noted Plaintiff went to physical therapy with improvement in her neck pain but complained she was still experiencing intermittent vertigo (Tr. 184).   However, any such relief from Plaintiff's neck pain appeared short-term, as her complaints of pain in her neck returned shortly thereafter (Tr. 313, 321). The next month, Plaintiff presented to MediQuick Walk-in Clinic complaining she was hurting from head to toe and her body ached like she had the flu (Tr. 209).   Plaintiff was tearful and frustrated that she had no energy, could not sleep and had a headache that had lasted four days (Tr. 210).   One week later, Plaintiff again presented to MediQuick Walk-in Clinic complaining of constant pain and fatigue (Tr. 207).   Plaintiff followed up with Dr. Scott on September 27, 2006 who stated, "Again, I feel the patient is unable to work at this time" (Tr. 323).   Further, the State's own consulting physician, Dr. Carpenter, determined Plaintiff's physical therapy and steroid injection treatments had only shown short-term improvement (Tr. 242).

Chapter 20 Code of Federal Regulations, Section 404.1520(3), provides that the

19

Social Security Administration ("SSA"), "will consider **all** evidence in your [the claimant's] case record when we [the SSA] make a determination or decision whether you are disabled" *(emphasis added)*.   Consequently, an ALJ cannot pick and choose from the evidence in order to support his or her conclusions.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability").  In addition, the Ninth Circuit has found remand warranted where the ALJ's "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998).

The Court's independent review of the record as a whole, as required under *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), reveals the ALJ has misquoted or misconstrued the record on several points. While the ALJ's misidentification of various reports could be mere clerical error, the undersigned is nonetheless concerned that such mistakes do not reflect a careful and thorough review of the record.[9]

Further, other than citing to intermittent reports showing normal motor function, the ALJ has failed to specify with particularity how Dr. Scott's opinion regarding Plaintiff's

---

[9] In addition to the reports discussed above, the undersigned would also note that the ALJ misstated the record in other places as well.  The ALJ represented that Plaintiff underwent a cervical epidural steroid injection on February 27, 2007 (Tr. 18), when such procedure actually took place on February 26, 2007 (Tr. 419).  Further, the ALJ stated Plaintiff testified she could lift fifty pounds (Tr. 22).  A review of the transcript reveals Plaintiff testified she was required to lift fifty pounds at her prior job as a deli worker (Tr.29).  Plaintiff then testified that she could presently only lift ten pounds without pain (Tr. 37).  Again, the undersigned is concerned the numerous misstatements of relevant dates and particularly the misrepresentation of Plaintiff's testimony do not reflect a diligent review of the record. *See Lampp v. Astrue*, 2008 WL 906641 at *3 (M.D. Fla. Mar. 31, 2008) (remand appropriate where ALJ misquotes the record); *Goulet v. Astrue*, 2008 WL 681049 at *3 (M.D. Fla. Mar. 7, 2008) (same).

severe, chronic pain and fatigue is inconsistent with his own medical records or is contrary to the evidence. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Muscle weakness and diminished motor function are not the only symptoms associated with fibromyalgia. "Fibromyalgia is a common syndrome in which people experience long-term, body-wide pain and tender points in joints, muscles, tendons, and other soft tissues. Fibromyalgia has also been linked to fatigue, sleep problems, headaches, depression, anxiety, and other symptoms." PUBMED HEALTH, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001463/ (Mar. 24, 2011). An independent review of the record appears to support Dr. Scott's opinion that Plaintiff's fibromyalgia placed substantial limitations on her ability to work, as the record contains numerous reports from Dr. Scott detailing Plaintiff's complaints of severe pain, fatigue, sleep problems, headaches, and depression.

The ALJ's reliance upon a lack of objective findings in the record to discount Dr. Scott's opinion regarding Plaintiff's fibromyalgia limitations was improper. As the Eleventh Circuit stated in *Somogy v. Comm'r of Soc. Sec.*,"the nature of fibromyalgia itself renders over-emphasis upon objective findings inappropriate." 366 Fed. Appx. 56, 65 (11th Cir. 2010) (*internal citations omitted*); *see also Green-Younger*, 335 F.3d at 108-09 (lack of physical abnormalities did not undercut claimant's complaints of pain since physical examinations of fibromyalgia patients "will usually yield normal results"). Based on the foregoing, the undersigned finds the ALJ failed to properly evaluate Dr. Scott's opinion and offered inadequate reasons for discrediting his opinion.

Since "a treating physician's testimony can be particularly valuable with respect to fibromyalgia, where objective evidence is often absent," *see Moore*, 405 F.3d at 1212, the

undersigned finds the ALJ's over-emphasis upon objective findings constitutes reversible error in this instance.   Accordingly, the undersigned finds the ALJ did not apply the proper legal standards in denying Plaintiff's disability claim.   Therefore, the decision of the Commissioner should be reversed and remanded for additional proceedings consistent with this Report and Recommendation.

### V.Conclusion

For the foregoing reasons, the undersigned finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards.  The Commissioner's decision should be hereby **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner should hold other proceedings as he deems necessary, but in any event should re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law, reweigh the opinion evidence, and give the appropriate weight to the opinion of Plaintiff's treating physician, Dr. Scott.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips*, 357 F.3d at 1244.

For the reasons stated herein, the undersigned **recommends the Commissioner's decision be REVERSED and the case be REMANDED for additional proceedings** consistent with the findings in this Report and Recommendation.  The undersigned further recommends the Clerk of the Court be directed to enter judgment consistent with this

Report and Recommendation.

**DONE AND ENTERED** at Jacksonville, Florida this 11<u>th</u> day of August, 2011.


Thomas E. Morris

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to
The Hon. Timothy J. Corrigan
All counsel of record